UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ANDREY KOSTIN,
  a/k/a "Andrei Kostin," and
VADIM WOLFSON,
  a/k/a "Vadim Belyaev,"

            Defendants.

**SEALED INDICTMENT**

24 Cr.

# 24 CRIM 091

---

## COUNT ONE
### (Conspiracy to Violate the International Emergency Economic Powers Act – The Kostin Superyachts)

The Grand Jury charges:

### Overview

1. From at least on or about April 6, 2018, through at least on or about March 2, 2022, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, and others participated in a scheme to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., through the provision of funds, goods, and services, including U.S. financial services and U.S. dollar transactions, to and for the benefit of KOSTIN, a Russian oligarch who was sanctioned and designated a Specially Designated National ("SDN") by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") on April 6, 2018. KOSTIN and others also engaged in a scheme to commit money laundering to promote IEEPA violations.

2. Before and after OFAC sanctioned ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, KOSTIN beneficially owned and controlled through shell companies various assets worth tens of millions of dollars, including real property in Aspen, Colorado (the

"Aspen Home"), and two superyachts identified as the *Sea Rhapsody* and *Sea & Us* (the "Kostin Superyachts").

3.      As explained more fully below, once an individual is designated an SDN by OFAC, there are significant restrictions on the SDN's ability to transact in the United States or with U.S. persons and, likewise, on U.S. persons' ability to transact with the SDN. But even after OFAC designated ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, an SDN, KOSTIN and others violated the IEEPA on numerous occasions, including by causing U.S. dollar payments to be made for the maintenance, operation, and/or improvement of the Kostin Superyachts for the benefit of KOSTIN and without an OFAC license.

4.      Further, in or about September 2019, after OFAC designated ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, an SDN, KOSTIN sold the Aspen Home to VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendant, for approximately $12 million without an OFAC license. In connection with that sale, KOSTIN and WOLFSON, the defendants, and others, including an assistant to WOLFSON ("Assistant-1"), caused approximately $12 million in U.S dollar payments resulting from the sale to be made for the benefit of KOSTIN, without an OFAC license.

## Relevant Individuals and Entities

5.      At all times relevant to this Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, was a Russian national and resided in Russia. Since 2002, KOSTIN has been the President and Chairman of Russian state-owned VTB Bank.

6.      At all times relevant to the Indictment, VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendant, was a Russian national and current U.S. legal permanent resident.

WOLFSON is the founder of Bank Otkritie, formerly one of the largest privately-held banks in Russia. In or about 2018, after leaving Russia, WOLFSON settled in the United States and changed his last name from Belyaev to WOLFSON. Between in or about 2018 and in or about 2019, WOLFSON resided in New York, New York.

7.     At all times relevant to this Indictment, Assistant-1 was a U.S. national and resided in New York, New York. Assistant-1 worked for WOLFSON as a personal assistant, and, beginning in or about January 2018, Assistant-1 became the main point of contact for individuals associated with managing the Aspen Home.

8.     At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1") was a close associate of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant. At all times relevant to this Indictment, CC-1, who has resided in Cyprus and Russia, served as a nominal owner for several of KOSTIN's assets, and CC-1 created, owned, and controlled a business in Cyprus that managed several of KOSTIN's companies and assets.

9.     At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-2") was a close associate of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and an employee of KOSTIN's employer, VTB Bank. CC-2 was a Russian national who resides in Russia and served as KOSTIN's primary assistant there. At all times relevant to this Indictment, CC-2 served as KOSTIN's proxy with respect to the Switzerland-based yacht management company ("Yacht Management Company") that managed the operations of the Kostin Superyachts, including with regard to providing approvals and making decisions related to the Kostin Superyachts' operation, maintenance, and improvement.

10.     At all times relevant to this Indictment, a co-conspirator not named as a

defendant herein ("CC-3") was a close associate of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant. CC-3 was an employee of VTB Bank and opened an office in Cyprus specifically to assist with the management of many of KOSTIN's shell companies and assets. At all times relevant to this Indictment, CC-3 was a Russian national who resided in both Cyprus and Russia while managing KOSTIN's assets.

## The IEEPA and the Relevant Sanctions, Orders, and Regulations

11.     The IEEPA gives the President of the United States certain powers, defined in 50 U.S.C. § 1702, to deal with any threats with respect to which the President has declared a national emergency and prescribes criminal penalties for violations. Section 1705 of the IEEPA provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a). It also provides for criminal penalties for any person who "willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a)." Id. § 1705(c).

12.     On or about March 6, 2014, pursuant to his authority under the IEEPA, the President issued Executive Order ("E.O.") 13660, declaring a national emergency to deal with the threat posed by the actions and policies of certain persons who had undermined democratic processes and institutions in Ukraine; threatened the peace, security, stability, sovereignty, and territorial integrity of Ukraine; and contributed to the misappropriation of Ukraine's assets.

13.     In further response to the actions and policies of the Government of the Russian Federation, including the purported annexation of the Crimea region of Ukraine, the President issued three subsequent Executive Orders that expanded the scope of the national

emergency declared in E.O. 13660, pursuant to his authority under the IEEPA. First, on or about March 16, 2014, the President issued E.O. 13661 to expand the scope of the national emergency declared in E.O. 13660. Second, on or about March 20, 2014, the President issued E.O. 13662 to further expand the scope of the national emergency declared in E.O. 13660 and expanded in E.O. 13661. Third, on or about December 19, 2014, the President issued E.O. 13685 to take additional steps to address the Russian occupation of the Crimea region of Ukraine. E.O. 13685 prohibits, among other things, the exportation or importation of any goods, services, or technology to or from the Crimea region of Ukraine and prohibits new investment in the Crimea region of Ukraine by a U.S. person, wherever located.

14.     Together, these Executive Orders (collectively, "the Russia/Crimea Executive Orders") authorize, among other things, the imposition of sanctions against persons responsible for or complicit in certain activities with respect to Ukraine; against officials of the Government of the Russian Federation; against persons operating in the arms or related materiel sector of the Russian Federation; and against individuals and entities operating in the Crimea region of Ukraine.

15.     The Russia/Crimea Executive Orders also block the property and interests in property of individuals and entities listed in the Annex to E.O. 13661 or of those determined by the U.S. Secretary of the Treasury, after consultation with the U.S. Secretary of State, to meet the criteria in E.O. 13660, E.O. 13661, E.O. 13662, or E.O. 13685. This results in those individuals and entities being listed on OFAC's Specially Designated Nationals and Blocked Persons List ("SDN List"). Unless otherwise authorized or exempt, transactions conducted by U.S. persons, including U.S. financial institutions, or occurring in the United States are prohibited if they involve

transferring, paying, exporting, withdrawing, or otherwise dealing in the property or interests in property of an entity or individual listed on the SDN List. The property and interests in property of an entity that is fifty percent or more owned, whether individually or in the aggregate, directly or indirectly, by one or more persons whose property and interests in property are blocked pursuant to any part of 31 C.F.R. chapter V are also blocked, regardless of whether the entity itself is listed.

16.     In addition to blocking the property and interests in property of persons and entities on the SDN List, the Russia/Crimea Executive Orders further prohibit U.S. persons from "the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of" any person or entity on the SDN List. E.g., E.O. 13661, at § 4(a).

17.     An individual or entity may seek to obtain a license from OFAC to transact with an individual or entity on the SDN List. Transacting with an SDN without first obtaining a license from OFAC is a violation of the IEEPA, 50 U.S.C. § 1705(a).

18.     A "U.S. person" is defined to include any United States citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any individual located in the United States. 31 C.F.R. part 589.339.

19.     On May 8, 2014, OFAC issued a set of regulations to implement the Russia/Crimea Executive Orders. 31 C.F.R. part 589.

**Sanctions Against the Defendants and Associated Entities**

20.     On or about July 29, 2014, OFAC, pursuant to E.O. 13662, sanctioned VTB Bank by adding it to OFAC's Sectorial Sanctions Identifications List. According to OFAC, at that time, VTB Bank, together with its subsidiaries, was "Russia's second largest banking group" with

"more than 1,600 offices in Russia," and "more than 30 banks in 23 countries across Europe, Asia, and Africa."

21.     On or about April 6, 2018, OFAC, pursuant to E.O. 13661, designated ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, as an SDN, "for being an official of the Government of the Russian Federation" in his role as "the President, Chairman of the Management Board, and Member of the Supervisory Council of state-owned VTB Bank."

22.     On or about June 2, 2022, OFAC, pursuant to E.O. 13661, identified the *Sea Rhapsody* as blocked property in which ANDREY KOSTIN, a/k/a "Andrey Kostin," the defendant, has an interest.

## Sanctions Violations and Money Laundering – The Kostin Superyachts

23.     From at least on or about April 6, 2018, through at least in or about March 2022, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and others participated in a scheme to violate the IEEPA by contributing and providing, and conspiring to contribute and provide, funds, goods, and services to and for the benefit of KOSTIN, specifically, for the operation, maintenance, and improvement of the Kostin Superyachts – the *Sea Rhapsody* and *Sea & Us* – after KOSTIN was designated as an SDN on April 6, 2018. Further, from at least on or about April 6, 2018, through at least in or about March 2022, KOSTIN and others engaged in international money laundering by transporting, transmitting, and transferring, and attempting to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, violations of the IEEPA.

24. At all times relevant to this Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, was the owner of the Kostin Superyachts. KOSTIN, and others, however, attempted to obfuscate the true ownership of the Kostin Superyachts. In particular, KOSTIN and others concealed KOSTIN's true ownership through shell companies, trusts, and intermediaries located and registered in countries throughout the world.

25. The *Sea Rhapsody* is a 216-foot superyacht that was designed and custom-built for ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, between 2008 and 2012. KOSTIN purchased the *Sea Rhapsody* for at least approximately $65 million. The *Sea Rhapsody* has six staterooms, including two luxurious master cabins identical in size. The *Sea Rhapsody* is equipped with amenities including water toys, gym equipment, an infinity pool, a jacuzzi, a cinema/club area, and customized stationery. From in or about 2012 through at least in or about March 2022, the *Sea Rhapsody* was used primarily by KOSTIN, KOSTIN's wife, and KOSTIN's family.

26. At all times relevant to this Indictment, the *Sea Rhapsody* was, on paper, owned by a shell company named Solston Shipping Limited ("Solston Shipping"). Solston Shipping was registered in Belize in November 2007.

27. The *Sea & Us* is a 205-foot superyacht that was designed and custom-built for ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, between 2016 and 2018. KOSTIN paid at least approximately $70 million for the *Sea & Us*. From in or about 2018, through at least in or about March 2022, the *Sea & Us* was used primarily by KOSTIN and his mistress.

28. At all times relevant to this Indictment, the *Sea & Us* was, on paper, owned by a shell company named Pasithea Shipping Limited ("Pasithea Shipping"). Pasithea Shipping

was registered in the Republic of the Marshall Islands in July 2016.

29. At all times relevant to this Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, owned and controlled Solston Shipping and Pasithea Shipping through, at various times, a series of additional shell companies, nominee owners, and trust and investment fund structures, which KOSTIN used to obscure his true beneficial ownership of the *Sea Rhapsody* and the *Sea & Us*. While the nominal ownership of Solston Shipping and Pasithea Shipping changed at certain points in the period between 2012 and March 2022, KOSTIN remained, at all relevant times, the true beneficial owner of the Kostin Superyachts.

30. Notwithstanding that ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, employed a series of shell companies and nominee owners to obscure his true beneficial ownership of the Kostin Superyachts, senior members of the crews, employees of the Yacht Management Company, and others all knew that ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, was the true owner of the Kostin Superyachts. For example, a U.S. national who was a member of the *Sea Rhapsody* crew from in or about 2016 through in or about 2019 ("Crew Member-1") knew KOSTIN as the owner of the *Sea Rhapsody*, regularly observed KOSTIN and his family using the *Sea Rhapsody*, and interacted with KOSTIN during those trips. After April 6, 2018, despite the sanctions that had been imposed on KOSTIN and the fact that the *Sea Rhapsody* was being maintained and used for KOSTIN's benefit, Crew Member-1's salary was paid into a U.S.-based bank account.

31. Moreover, as noted above, the *Sea Rhapsody* was primarily used by ANDREI KOSTIN, a/k/a "Andrei Kostin," the defendant, his wife, and his immediate family, and the *Sea & Us* was primarily used by KOSTIN and his mistress. Crew for the Kostin Superyachts

and employees of the Yacht Management Company referred to KOSTIN as the "boss," the "principal," and to the *Sea Rhapsody* being part of "Kostin fleet" or the "Mr. K fleet."

32. From on or about April 6, 2018, through in or about March 2022, the Yacht Management Company managed the Kostin Superyachts. During this same time period, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, or CC-2 as KOSTIN's proxy, approved Yacht Management Company actions to operate, maintain, and improve the Kostin Superyachts, which actions were then administratively executed by CC-1 through his Cyprus-based company. From on or about April 6, 2018, through in or about March 2022, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, CC-1, CC-2, and others facilitated at least 100 transactions in U.S. dollars through U.S. banks, including through the Southern District of New York, for the operation, maintenance, and improvement of the Kostin Superyachts.

## Sanctions Violations – The Aspen Home

33. From at least on or about April 6, 2018, through at least in or about September 2019, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, and others participated in a scheme to violate the IEEPA by providing funds, goods, and services for the benefit of KOSTIN, whose property and interests in property were blocked. Specifically, they operated, maintained, and improved, and conspired to operate, maintain, and improve, the Aspen Home for KOSTIN's benefit. In or about September 2019, KOSTIN, WOLFSON, and others, including Assistant-1, further participated in a scheme to violate the IEEPA by dealing in and transferring KOSTIN's blocked property. Specifically, they sold and conspired to sell the Aspen Home for KOSTIN's benefit and provided and conspired to provide KOSTIN with approximately $12 million resulting from the sale.

34. In approximately 2010, CC-1 traveled to Aspen, Colorado to purchase a home on behalf of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant. CC-1 facilitated and finalized the purchase of the Aspen Home, including by attending the closing on behalf of KOSTIN, in approximately April 2010. KOSTIN purchased the Aspen Home for approximately $13.5 million in the name of 40 North Star LLC ("40 North Star"), a Colorado limited liability company that was formed in 2010 and that nominally owned the Aspen Home until 2020. 40 North Star was, at all relevant times, managed by a lawyer who was based in Aspen, Colorado ("Lawyer-1").

35. ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, owned and controlled 40 North Star through, at various times, a series of additional shell companies, nominee owners, intermediaries, and trust structures. While the nominal ownership of 40 North Star changed at certain points in the period between 2010 and September 2019, KOSTIN remained, at all relevant times, the true beneficial owner of the Aspen Home.

36. In or about May 2011, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, wrote a letter to the neighbors of the Aspen Home in which he introduced himself, attached his resume, and stated that "an entity that I control [i.e., 40 North Star] purchased Lot 6 [i.e., the Aspen Home] last year."

37. In or about January 2012, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, purchased several artworks worth over $1 million for the Aspen Home from an art dealer in Aspen, Colorado.

38. Between approximately 2010 and 2017, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, came to the United States to use the Aspen Home for approximately two

weeks every year, typically arriving around Christmas and leaving after New Year's Day. On those visits, KOSTIN was accompanied by members of his family and/or his house staff. In contemporaneous correspondence between the individuals responsible for the operation of the Aspen Home – including Lawyer-1, Lawyer-1's assistant, a property manager (the "Property Manager"), CC-2, and others – ANDREY KOSTIN, a/k/a "Andrei Kostin" the defendant, was referred to as the "owner" or "boss" with regard to the Aspen Home and 40 North Star.

39.     To the extent others used the Aspen Home in the period between 2010 and 2017, those individuals did so as the guests of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant. For example, on or about February 18, 2015, CC-2 wrote to the Property Manager regarding "the visit of Mr. Vadim Belyaev [i.e., VADIM WOLFSON] and his family in the end of February," explaining that the Property Manager would soon receive a "list of guests" and confirming that "[a]s the boss [i.e., KOSTIN] said we cover all the expenses" for this group of guests. Approximately one week later, on or about February 25, 2015, the Property Manager sent an email to Lawyer-1's assistant attaching receipts for expenses incurred "for the Belyaev group (Mr. K's guests)."

40.     Moreover, between approximately 2010 and January 2018, Lawyer-1 and Lawyer-1's assistant submitted requests for funding for 40 North Star to maintain the Aspen Home and to support the visits of ANDREY KOSTIN, a/k/a "Andrei Kostin", the defendant, to individuals that worked directly or indirectly for KOSTIN, namely CC-1 or employees of CC-1's Cyprus-based company. CC-2 as KOSTIN's proxy usually approved the budget and financing for KOSTIN's visits.

41.     In February and March 2014, Russia invaded and annexed the Crimea

region of Ukraine. In connection with these actions, in March 2014, the United States began imposing sanctions against individuals and entities, including several Russian government officials. A prominent Russian bank, Bank Rossiya, was the first lender to be sanctioned by the U.S. at the end of March 2014.

42.     In or about May 2014 – approximately two months before OFAC sanctioned VTB – nominal ownership of 40 North Star was transferred to a new shell company, Altamonte Holding Limited ("Altamonte"). Altamonte had been registered in the British Virgin Islands in April 2014, just one month before.

43.     Altamonte purchased 40 North Star for approximately $10 million. Capital Business Finance provided the financing for Altamonte's purchase of 40 North Star in the form of a $10 million loan.

44.     Capital Business Finance is owned and controlled, through various other shell companies and intermediaries, by CC-1 and CC-3 on behalf of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant. Specifically, Capital Business Finance's shares are held by a nominal shareholder in trust for a shell entity called Gesford Holdings, which is in turn owned by Atkien Enterprises, as a nominee for CC-1, and Ionic Nominees Limited, as a nominee for CC-3.

45.     Between in or about 2014 through at least in or about 2017, Capital Business Finance regularly funded the bank account used by Altamonte in advance of Altamonte making payments to 40 North Star, located in Aspen, Colorado. These payments from Altamonte to 40 North Star were in connection with funding requests submitted by Lawyer-1 and Lawyer-1's assistant, and were related to the maintenance of the Aspen Home and the visits of ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and his guests to the Aspen Home.

46.     By at least approximately December 2017, there were public media reports regarding anticipated new U.S. sanctions that were likely to be imposed in early 2018 as a result of the ongoing Russia-Ukraine war, including anticipated sanctions that would target Russian oligarchs. A news article published in January 2018 reported that KOSTIN was aware of "a high risk his name would be added to a new U.S. list of people close to Vladimir Putin, but that he was unfazed by the prospect."[1]

47.     On or about January 11, 2018, Lawyer-1 received an email from an email address used by CC-1's assistant stating that: "[A]ll business correspondence, instructions, and necessary approvals regarding the [Aspen Home] should be done through the authorized representative – [Assistant-1]." Beginning at least in or about 2018 through at least in or about 2020, the Aspen Home was used primarily by VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendant, and his family, who were frequently accompanied by Assistant-1.

48.     As is noted above, on or about April 6, 2018, OFAC designated ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, as an SDN. On or about September 25, 2019, VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendant, purchased 40 North Star by: (1) transferring $11.8 million from a Cyprus bank account WOLFSON controlled to CapitalInvest Limited ("CapitalInvest"); and (2) causing Altamonte to transfer $200,000 to CapitalInvest. Capital Invest is a wholly owned subsidiary of Capital Business Finance, which, as described above, was nominally owned and controlled by CC-1 and CC-3 on behalf of KOSTIN. Assistant-

---

[1] *Russia's VTB Bank Head Kostin Shrugs Off U.S. Sanctions Risk*, REUTERS (Jan. 22, 2018), https://reuters.com/article/us-russia-vtb-sanctions/russias-vtb-bank-head-kostin-shrugs-off-u-s-sanctions-risk-idUSKBN1FB13N/.

1 and CC-3 worked with a Cyprus-based individual who served as WOLFSON's financial advisor, and who helped manage various assets and shell companies on behalf of WOLFSON, to finalize the relevant contracts and agreements and to cause and facilitate the transactions effectuating the sale of the Aspen Home to WOLFSON.

## Statutory Allegations

49.     From at least on or about April 6, 2018, through at least in or about March 2022, in the Southern District of New York and elsewhere, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to violate orders, regulations, and prohibitions in and issued under the IEEPA, codified at Title 50, United States Code, Section 1705, Executive Order 13661, and 31 C.F.R. § 589.201.

50.     It was a part and an object of the conspiracy that ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and others known and unknown, would and did willfully and knowingly violate the IEEPA, and the regulations promulgated thereunder, to wit, KOSTIN and his co-conspirators willfully and knowingly caused U.S. persons, including U.S. financial institutions, to (i) provide funds, goods, and services to and for the benefit of KOSTIN, whose property and interests in property had been blocked pursuant to Executive Order 13661, and to or for the benefit of companies that KOSTIN owned and controlled, in connection with the operation, maintenance, and improvement of KOSTIN's blocked property, to wit, the Kostin Superyachts and (ii) receive funds, goods, and services from KOSTIN and from companies KOSTIN owned and controlled, in connection with the operation, maintenance, and improvement of KOSTIN's blocked property, to wit, the Kostin Superyachts, without first obtaining the required license from

OFAC, in violation of Title 50, United States Code, Section 1705, Executive Order 13661, and 31 C.F.R. § 589.201.

(Title 50, United States Code, Section 1705; Executive Order 13661; and Title 31, Code of Federal Regulations, Section 589.201.)

## COUNT TWO
### (Conspiracy to Commit International Money Laundering – the Kostin Superyachts)

The Grand Jury further charges:

51. The allegations set forth above in Paragraphs 1 through 48 are realleged and incorporated by reference as if set fully forth herein.

52. From at least on or about April 6, 2018, through at least in or about March 2022, in the Southern District of New York and elsewhere, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

53. It was a part and an object of the conspiracy that ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, violations of the IEEPA, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Section 1956(h).)

## COUNT THREE
### (Conspiracy to Violate the

**International Emergency Economic Powers Act – the Aspen Home)**

The Grand Jury further charges:

54.     The allegations set forth above in Paragraphs 1 through 48 are realleged and incorporated by reference as if set fully forth herein.

55.     From at least on or about April 6, 2018, through at least in or about September 2019, in the Southern District of New York and elsewhere, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate the IEEPA, in violation of Title 50, United States Code, Section 1705, Executive Order 13661, and Title 31, Code of Federal Regulations, Section 589.201.

56.     It was a part and an object of the conspiracy that ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, and others known and unknown, would and did willfully and knowingly violate the IEEPA, and the regulations promulgated thereunder, to wit, KOSTIN, WOLFSON, and their co-conspirators willfully and knowingly (i) dealt in blocked property, to wit, the Aspen Home; (ii) provided funds, goods and services for the benefit of KOSTIN, whose property and interests in property had been blocked pursuant to Executive Order 13661, and to or for the benefit of companies that KOSTIN owned and controlled, by dealing and causing others to deal with KOSTIN's blocked property, to wit, the Aspen Home; (iii) received funds, goods, and services from KOSTIN and from companies KOSTIN owned and controlled, in connection with the operation, maintenance, and improvement of the Aspen Home; and (iv) caused approximately $12 million to be transferred to a shell entity controlled by KOSTIN, for KOSTIN's benefit, without first obtaining the required license from

OFAC, in violation of Title 50, United States Code, Section 1705, Executive Order 13661, and 31 C.F.R. § 589.201.

(Title 50, United States Code, Section 1705; Executive Order 13661; and
Title 31, Code of Federal Regulations, Section 589.201.)

## COUNT FOUR
### (Violations of the International Emergency Economic Powers Act)

The Grand Jury further charges:

57.     The allegations set forth above in Paragraphs 1 through 48 are realleged and incorporated by reference as if set fully forth herein.

58.     From at least on or about April 6, 2018, through at least in or about September 2019, in the Southern District of New York and elsewhere, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, willfully and knowingly violated the IEEPA, and the regulations promulgated thereunder, to wit, KOSTIN, WOLFSON, and others caused U.S. persons, including U.S. financial institutions, to (i) deal in blocked property, to wit, the Aspen Home; (ii) provide funds, goods, and services to and for the benefit of KOSTIN, whose property and interests in property had been blocked pursuant to Executive Order 13661, and to or for the benefit of companies that KOSTIN owned and controlled, in connection with the operation, maintenance, and improvement of KOSTIN's blocked property, to wit, the Aspen Home, and (iii) receive funds, goods, and services from KOSTIN and from companies KOSTIN owned and controlled, in connection with the operation, maintenance, and improvement of the Aspen Home, without obtaining the required license from OFAC, in violation of Title 50, United States Code, Section 1705, Executive Order 13661, and 31 C.F.R. § 589.201.

(Title 50, United States Code, Section 1705; Executive Order 13661;
Title 31, Code of Federal Regulations, Section 589.201; and

Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Violations of the International Emergency Economic Powers Act)

The Grand Jury further charges:

59.     The allegations set forth above in Paragraphs 1 through 48 are realleged and incorporated by reference as if set fully forth herein.

60.     From at least on or about April 6, 2018, through at least in or about September 2019, in the Southern District of New York and elsewhere, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, willfully and knowingly violated the IEEPA, and the regulations promulgated thereunder, to wit, in or about September 2019, KOSTIN, WOLFSON, and others caused approximately $12 million to be transferred to a shell entity controlled by KOSTIN, for KOSTIN's benefit, without obtaining the required license from OFAC, in violation of Title 50, United States Code, Section 1705, Executive Order 13661, and 31 C.F.R. § 589.201.

(Title 50, United States Code, Section 1705; Executive Order 13661;
Title 31, Code of Federal Regulations, Section 589.201; and
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

61.     As a result of committing the offense alleged in Count One of this Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the

commission of said offense.

62. As a result of committing the offense alleged in Count Two of the Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

63. As a result of committing one or more of the offenses alleged in Counts Three through Five of this Indictment, ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts Three through Five, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

       a. William Robinson Leigh, "Combing the Ridges." An original oil on canvas painting dating to 1944; 27.5 x 21.5 with original frame; valued at approximately $ 450,000.

       b. Wilhelm Heinrich Detlev Koerner, "Long in the Saddle." An original oil on canvas painting dating to 1929; 37 x 32 with original frame; valued at approximately $ 280,000.

       c. Wilhelm Heinrich Detlev Koerner, "Arapaho Attack." An original oil on

canvas painting dating to 1931. 28 x 40 with original frame; valued at approximately $ 280,000.

## Substitute Asset Provision

64.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of ANDREY KOSTIN, a/k/a "Andrei Kostin," and VADIM WOLFSON, a/k/a "Vadim Belyaev," the defendants,

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

DAMIAN WILLIAMS
UNITED STATES ATTORNEY